391 F.2d 574
 Regis ROTHLEIN, Robert Rectenwald, Anthony J. Zoelle, Robert
McLaughlin, Robert Safron and Leo Heckman, on
Behalf of Themselves and All Others
Similarly Situated, Appellants,
v.
ARMOUR & COMPANY, Inc.
 No. 16771.
 United States Court of Appeals Third Circuit.
 Argued Dec. 21, 1967.
Decided March 26, 1968.
 
 Richard D. Gilardi, McArdle & McLaughlin, Pittsburgh, Pa., for appellants.
 John G. Wayman, Reed, Smith Shaw & McClay, Pittsburgh, Pa., (Scott F. Zimmerman, Pittsburgh, Pa., on the brief), for appellee.
 Before BIGGS, McLAUGHLIN and VAN DUSEN, Circuit Judges.
 OPINION OF THE COURT
 VAN DUSEN, Circuit Judge.
 
 
 1
 This appeal is from summary judgment entered for the defendant below, Armour & Company, Inc., in a suit brought against Armour by the appellants, certain employees of Armour. The appellants allegedly represented a class of eighty-six employees and sought an accounting and payment of amounts owing them under a pension plan established by Armour in 1952. They brought the suit under Section 301 of the Labor Management Relations Act (29 U.S.C. 185(a)) claiming the accounting and payment were owed them under a collective bargaining agreement between Armour and the appellants' union, Local 249, General Teamsters, Chauffeurs, and Helpers of America ('Teamsters Local 249').
 
 
 2
 The 1952-3 collective agreement first made Armour's Pension 'plan effective for appellants.[1] This pension plan coverage was apparently continued in the agreements negotiated every year until 1964.[2] In 1964, Teamsters Local 249 obtained Armour's agreement to make payments to the Teamsters Pension Plan. The 1964 contract said nothing about the Armour plan; it merely provided that Armour would pay certain sums per employee per week into the Teamsters Pension Plan.[3]
 
 
 3
 The apparent gravamen of appellants' complaint is that they have never seen the documents governing the actual '1952' Armour Pension Plan. (It is noted that such pension plan does not appear in the record.) Furthermore, they claim they have no idea of the amounts accumulated for each employee under the '1952' plan. The appellees, on the other hand, aver under oath[4] that in negotiations for the 1964 agreement, Teamsters Local 249 agreed that all employees would withdraw from and cease to have any right, title or interest in the Armour Pension Plan or Pension Fund, with the exception of five named employees who could not qualify for the Teamsters Pension Plan.[5] As evidence of this alleged agreement, appellee points to Exhibit III of its Answer, a 'Supplemental Agreement' to the 1964 contract, and the provision that 'in settlement of grievances or working conditions * * * it is recognized that * * * (the five) employees will continue to be covered by the Armour Plan. * * *'[6] Armour contends that the necessity of making such an agreement proves that all employees, including the five later exceptions, were otherwise totally out of the Armour Pension Plan. An appellants' affidavit by an employee who allegedly attended all negotiations of the 1964 contract, denied that Teamsters Local 249 ever waived any employee's 'right, title and interest in and to the Armour Pension Plan and the Armour Pension Fund.'
 
 
 4
 After the complaint and answer were filed, Armour asked for summary judgment, alleging that the appellants had not exhausted the contractual grievance procedure. The district court granted a stay of all proceedings to allow appellants to pursue the grievance procedure. After the appellants had taken their grievance through the three steps provided in the 1964 agreement, both sides stipulated an end to the stay. Appellants asked that the trial under Section 301 again proceed; Armour amended its motion for summary judgment stating that the grievance procedure had resulted in a final rejection of the appellants' grievance. Interpreting the grievance procedure of the 1964 contract as making the rejection of appellants' grievance 'final,'[7] and finding the decision in Haynes v. United States Pipe & Foundry Company, 362 F.2d 414 (5th Cir. 1966) persuasive that the 'final' determination was binding on the court,[8] the district court granted Armour's motion for summary judgment.
 
 
 5
 We do not agree with the District Court that on this record no substantial issue of fact remains. As a major step in any reasoning that permits the conclusion below, it must be decided that the present controversy is a 'difference * * * between the Company and employees' as that phrase was intended in Article XIV of the 1964 contract.[9] It is conceivable that a request for an accounting and payment under an 'old' employer pension plan is not a 'difference' as that word is used in this present contract. Furthermore, there must also be a preliminary determination that the 'grievance procedure' in the 1964 contract is the appropriate procedure in this case and not the 'grievance procedure' of Article #14 of the 1952 agreement which has as its apparent final step:
 
 
 6
 'If a mutual understanding cannot be arrived at, said grievance shall be turned over to the local for further study and a decision.'[10]
 
 
 7
 Although the 'old' contract was apparently terminated by the union June 19, 1964, it is possible that the '1952' grievance procedure is the appropriate one in this case. The pension fund at issue was made effective under the old contract and the notes of the hearing on the stay referred to the 'applicable grievance procedure'. The parties then proceeded to employ the 1964 grievance procedure. But the record does not give any indication that the district court ever decided this question of which grievance section should be employed to decide pension plan rights granted under the earlier '1952' contract. This latter grievance provision might well require a different conclusion as to whether exhaustion of its provisions produced a 'final' decision on a 'difference' between Armour and its employees.[11]
 
 
 8
 It is appropriate in this case, however, also to point out the legal rules applicable if the district court again decides that these individual employees have obtained a 'final' decision under the relevant contract grievance procedure. It seems proper under Federal Labor Law that such suits by individuals under Section 301 of the L.M.R.A. not be dragged out indefinitely by procedural or preliminary controversies and that individual claims, if they are properly before the court under Section 301 jurisdiction, be decided on the merits without unnecessary delay.
 
 
 9
 The Supreme Court of the United States has ruled that under Section 301, individual employees have the right and the standing to sue on collective bargaining contracts negotiated by their union and their employer.[12] The broad grant to employees in the early cases, however, has been considerably circumscribed in subsequent decisions. Accordingly, one present rule is that an individual may not sue under Section 301 unless he has first had recourse to the 'grievance' procedures under the collective bargaining contract.[13]
 
 
 10
 Under this rule, initially procedural in nature, certain consequences may ensue for the complaining employee with regard to the 'merits' of his suit. As the question is presented on the present record, if the 'grievance procedure' of his contract provides for a 'final' determination of the 'merits' of his complaint, is an employee barred from further suing under Section 301?[14] As the district court recognized, the Supreme Court has not yet answered this precise question.[15] But other decisions offer some guidance. The Supreme Court's 'arbitration' cases,[16] suggest that when a comprehensive contractual procedure is available, such as arbitration, federal labor policy demands both initial recourse to such procedures and limited appeal from the decisions reached.[17] One avenue of recourse, however, to allow further suit under Section 301 for individual rights in a collective contract, opens when an employee proves that his union violated its duty of fair representation in representing his interests in the contractual procedure.[18] Another means of escape from 'arbitration' finality would also seem possible when an employee shows that the 'arbitration' is a sham, or is substantially inadequate or unavailable.[19] The Supreme Court has indicated by these decisions that, although a suit may be brought under Section 301 by individual employees, they will escape being bound by a 'private' decision on the merits of their complaint in only a very few instances.[20] Frivolous complaints should not clog the courts.[21] Claims intimately related to a collective bargaining relationship should not allow courts to strait-jacket unions and employers.[22] And run-of-the-mill disputes should be settled by the union, on behalf of the employee, because such a procedure substantially assists the union as the employees' representative.[23]
 
 
 11
 But we do not think the teaching of the Supreme Court's 'arbitration' decisions means that regardless of the employee claim involved, an agreement between the union and management that the claim was without merit should bind the courts. Rather we think that in a case such as the one at the bar, the district court should consider in some detail whether or not to accept the private determinations made under the contract and thus use it as a basis for summary judgment.[24] For instance in the present case, it might appear that an 'accounting' for pension funds is not the type of dispute contemplated by the grievance procedures of the contract.[25] What most probably underlies the present dispute are the terms of the Armour Pension Plan and Fund and the contractual provisions relating to 'vesting' or termination of coverage.[26] While the controversy over or the status of such 'old' funds may well be a critical item in the collective bargaining relationship between Armour and Teamsters Local 249, this fact could also show that an employee would have to oppose both Teamsters Local 249 and Armour to get such an accounting.[27] In deciding whether the grievance procedure provides an acceptable 'merits' determination, in light of the possible unity of union and management interest, the type of procedure afforded becomes relevant.[28] For instance, both the 1952 and 1964 contract in the present case did not provide arbitration to resolve disputes. The process contemplated might therefore work only when the union and management took different positions. On the present record their positions on the Pension Plan cannot be determined. In analysing the above factors, before a district court should accept a contractual 'merits' determination as a basis for granting summary judgment under Section 301, the judge should be satisfied that the quality of the contractual grievance procedures, in actual practice and 'legally,' is commensurate with the substantiality of the claim or dispute presented by the employee. If the procedures suffer because a union is in breach of its duty of fair representation, clearly the individual shoudl have recourse to the courts.[29] If an infirmity less than that is present, federal labor policy would suggest that the rights of a few (the individual employees with complaints) be carefully balanced against the concerns of the many (all employees, who have a collective interest in the bargaining position of their union and the integrity of the contract).[30]
 
 
 12
 For the foregoing reasons we will reverse the order of June 9, 1967 granting appellee summary judgment, and remand the case for disposition in accordance with the above opinion.
 
 
 
 [1]
 Article #17 Exhibit A of Complaint:
 'The pension plan in effect as of this date for hourly paid production employees in the Pittsburgh plant will be made effective October 1, 1952 for employees covered by this agreement.'
 
 
 [2]
 See paragraph 'TWELFTH' of Complaint, 52, admitted by appellee's Answer
 
 
 [3]
 Article XVII of October 1, 1964 Master Agreement, Exhibit II of Answer
 
 
 [4]
 The answer and the exhibits thereto were supported by the affidavit of the controller of the Armour Pittsburgh Plant
 
 
 [5]
 The five were either on terminal sick leave at the time or had accepted early retirement under the Armour Plan
 
 
 [6]
 'Supplemental Agreement' to 1964 contract, footnote 3, supra
 
 
 [7]
 Article XIV of October 1, 1964 'Master Agreement':
 'Grievance Procedure
 '14.1 Should differences arise between the Company and the Union, or between the Company and employees, there shall be no strike, stoppage, slowdown, suspension of work or boycott on the part of the Union or its members or the employees, or lockout on the part of the Company on account of such dispute, until such matters have been processed through the grievance procedure provided below:
 '(a) FIRST STEP: The Union member shall report his grievance to the Shop Steward, who shall attempt to adjust the matter with the Foreman. The time limit for management's answer in the First Step shall be 24 hours.
 '(b) SECOND STEP: Upon failing to agree the Member shall fill out the prescribed grievance form and give two (2) copies to the Employer and one (1) to the Steward. The Steward and the Committee and Company representatives will then meet to resolve the grievance. The time limit for management's answer in the Second Step shall be 3 days.
 '(c) THIRD STEP: If the parties fail to reach a settlement in the first or second step, the grievance then will be referred to the B.A. and local Union committee, and Company representatives to settle said grievance. The time limit for Management's answer in the Third Step shall be 7 days.
 '14.2 When a settlement is arrived at, at any stage of this procedure, such decision shall be final and binding on all parties.
 '14.3 Any grievance not appealed in writing to the next higher step in the procedure within 7 days after receipt of management's answer shall be deemed to be finally resolved on the basis of management's last answer.'
 
 
 [8]
 Haynes, like the case at bar, concerned a contract that produced a 'final' decision on a grievance (over wrongful discharge) under a procedure that did not involve arbitration. Even though the court had 'jurisdiction' under 301, the court apparently regarded the case already decided on the merits
 
 
 [9]
 Since this language appears in a Teamsters 'Master Agreement' it is probable that there are evidence of past practices and/or rulings that would be relevant to the proper construction of this language in this case
 
 
 [10]
 The 1952 agreement with this Article #14 was attached as Exhibit A to appellants' complaint. See Aughenbaugh v. North American Refractories Co., 426 Pa. 211, 231 A.2d 173 (1967), a recent decision where the arbitrator, Dean Thomas F. Quinn, found that a preferential hiring dispute was governed by the terms of a 1962 contract even though that contract had been supposedly superseded by a 1964 contract. Unlike the new 1964 contract, the former document did not provide for arbitration of disputes and instead provided for 'discussion.' The Supreme Court of Pennsylvania held the employee-plaintiffs not bound by such 'discussion' since the contract provisions lacked the requisite degree of 'mutually agreed upon finality.'
 
 
 [11]
 Even though the legally applicable grievance procedure is under the '1952' contract, the parties may have waived any right to such procedure by proceeding under Article #14 of the October 1, 1964 agreement
 
 
 [12]
 Smith v. Evening News Assn., 371 U.S. 195, 83 S.Ct. 267, 6 L.Ed.2d 246 (1962); Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964)
 
 
 [13]
 Republic Steel v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965)
 
 
 [14]
 Cf., 29 U.S.C. 173(d), for a related statutory provision suggesting that further recourse from 'method agreed upon by the parties' should be allowed only in 'exceptional cases.' See Note, 301 (a) and the Employee: An Illusory Remedy, 35 Fordham L.Rev. 517 (1967)
 
 
 [15]
 In Republic Steel v. Maddox, supra, at 652, 85 S.Ct. at 616, the Court suggested that it was not necessary to decide this question. 'If the union refuses to press or only perfunctorily presses the individual's claim, differences may arise as to the forms of redress then available.' See also Mr. Justice Black's dissent, 379 U.S. at 664-665 and 669, 85 S.Ct. 614 and Smith v. Evening News Assn., supra, 375 U.S. at 200, 84 S.Ct. 363
 
 
 [16]
 United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); cf., Local 174, Teamsters, etc., v. Lucas Flour Co., 369 U.S. 95, 105, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962)
 
 
 [17]
 E.g., United Steelworkers of America v. Enterprise Corp., supra, 363 U.S. at 596, 80 S.Ct. 1358
 
 
 [18]
 E.g., Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967)
 
 
 [19]
 E.g., Walker v. Southern R. Co., 385 U.S. 196, 87 S.Ct. 365, 17 L.Ed.2d 294 (1966) where, under the related Railway Labor Act provision, inadequacy of the available arbitration allowed the employee to sue
 
 
 [20]
 The Supreme Court has denied certiorari in two cases that might have provided the opportunity for defining the proper occasion for allowing a 301 suit to continue despite a private decision on the merits. In Hildreth v. Union News Company, 315 F.2d 548 (6th Cir.) cert. den. 375 U.S. 826, 84 S.Ct. 69, 11 L.Ed.2d 59 (1963), the union refused to press a discharge grievance, apparently because it agreed with the employer the discharge was for just cause. Adhering to their earlier decision, 295 F.2d 658 (6th Cir. 1960), the court cited the union's lack of any bad faith, lack of conspiracy with the employer, or breach of its duty of fair representation as reasons directing a verdict against the employee for 'no cause of action.' A second case stemming from the same situation was decided on the same grounds, Simmons v. Union News Company, 341 F.2d 531 (6th Cir.) cert. den. 382 U.S. 884, 86 S.Ct. 165, 15 L.Ed.2d 125 (1965). Cf., Comment, Federal Protection of Individual Rights Under Labor Contracts, 73 Yale L.J. 1215, 1230 ff. (1964)
 
 
 [21]
 See e.g., the fear of added Federal Court congestion, association of Westinghouse Salaried Employees v. Westinghouse Corp., 348 U.S. 437, 460, 75 S.Ct. 489, 99 L.Ed. 510 (1955); see also Vaca v. Sipes, supra, 386 U.S. at 191, 87 S.Ct. 903, 17 L.Ed.2d 842
 
 
 [22]
 Cf. Comment, supra, note 15, 73 Yale L.J. at 1231 (1964)
 
 
 [23]
 See e.g., Republic Steel v. Maddox, supra, 379 U.S. at 653, 656, 85 S.Ct. 614 (the dispute was over severance pay). See also Guille v. Mushroom Transportation Company, 425 Pa. 607, 229 A.2d 903 (1967) (an individual discharge case); Haynes v. United States Pipe & Foundry Company, supra, (wrongful discharge of an individual). Cox, Rights Under a Labor Agreement, 69 Harv.L.Rev. 601 (1956)
 
 
 [24]
 For instance, Elgin, J. & E.R. Co. v. Burley, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945), affirmed on rehearing, 327 U.S. 661, 66 S.Ct. 721, 90 L.Ed. 928 (1945), a decision under the Railway Labor Act, suggests that union settlement of an individual's claim may perhaps be upset (and individual suit thus constitute the employee's remedy) when a union has no authority from the employee to settle his claim. The burden of negating such authority, would appear to be on the employee, 327 U.S. at 664, 66 S.Ct. 721. See also Vaca v. Sipes, supra, 386 U.S. at 191, 87 S.Ct. at 917: '* * * we accept the proposition that a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion * * *.'
 
 
 [25]
 See Boeing Co. v. International Union, U.A., A. & A. Imp. Wkrs., 370 F.2d 969 (3d Cir. 1967); Atkinson v. Sinclair Refining Co., 370 U.S. 238, 241, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962). See also Mr. Justice Black's dissent in Republic Steel v. Maddox, supra, 379 U.S. at 663-664, 85 S.Ct. 614, where he suggests that not every employee claim is a 'grievance.'
 
 
 [26]
 See e.g., Sparta v. Lawrence Warehouse Company, 368 F.2d 227 (3d Cir. 1966); Melone, Joseph J., Collectively Bargained Multi-Employer Pension Plans, Chapter VI; Summers, Union Schism in Perspective, 45 Va.L.Rev. 261, 279 and n. 84 (1959)
 
 
 [27]
 For instance, the employer might demand lower payments to the union's 'new' plan if certain amounts set aside under the 'old' plan weren't available. The union might side with the employer, hoping to keep such payments to its pension fund as high as possible. The coincidence of union and employer interests, at least if allegedly a conspiracy, has been recognized as grounds for disregarding an otherwise 'final' decision in a seniority dovetailing case, Fuller v. Highway Truck Drivers & Helpers Local 107, 233 F.Supp. 115 (E.D.Pa.1964)
 
 
 [28]
 While 'arbitration' is clearly favored under federal labor policy, e.g., the Steelworkers cases, suprs, note 11, other types of 'settlement' may not be as intrinsically satisfactory since further from a 'judicial' model. Factors in evaluating the contract procedure might include consideration of whether an employee can intervene personally (cf. 9(a) of the N.L.R.A., 29 U.S.C. 159(a)), whether he signs a waiver or otherwise overtly consents to the union's representation, whether a 'third' party acts as the decision maker
 
 
 [29]
 Vaca v. Sipes, supra
 
 
 [30]
 See Summers, Individual Rights in Collective Agreements and Arbitration, 37 N.Y.U.L.Rev. 362 (1962). The presence of a genuine class action, as alleged in the present case, may serve to differentiate this suit from one involving the complaint of a single employee among many. See cases, supra, footnote 23, and compare Aughenbaugh v. North America Refractories Co., supra, footnote 10, where the suit was brought by several employees