437 F.2d 167
 76 L.R.R.M. (BNA) 2257, 64 Lab.Cas. P 11,416
 Curtis M. HARRIS et al., Plaintiffs-Appellants,
v.
CHEMICAL LEAMAN TANK LINES, INC., Defendant-Appellee.
No. 30532 Summary Calendar.*
*Rule 18, 5th Cir.; See Isbell Enterprises, Inc
v.
Citizens Casualty Company of New York et al., 5th Cir.,
1970, 431 F.2d 409, Part I.
 United States Court of Appeals, Fifth Circuit.
 Jan. 7, 1971.
 
 Robert Stahala, Garrett & Stahala, F. R. Sears, Sears, Parker & Quisenberry, Fort Worth, Tex., for plaintiffs-appellants.
 Maurice Bresenhan, Jr., Houston, Tex., Ringe, Peet & Mason, Philadelphia, Pa., Wm. L. Keller, Allen Butler, Clark, West, Keller, Sanders & Ginsberg, Dallas, Tex., for defendant-appellee.
 Before WISDOM, COLEMAN, and SIMPSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 In this case we adopt as the opinion of this Court the Memorandum Opinion of the Honorable Leo Brewster, United States District Judge, filed July 22, 1970, cf. Lomax v. Armstrong Cork Company et al., 5 Cir., 1970, 433 F.2d 1277.
 
 
 2
 The judgment of the District Court, accordingly, is
 
 
 3
 Affirmed.*
 
 MEMORANDUM OPINION
 
 4
 (Number and Title Omitted)
 
 
 5
 (Filed: July 22, 1970)
 
 
 6
 Plaintiffs bring this class action against defendant, Chemical Leaman Tank Lines, Inc., as individuals and on behalf of all other employees of defendant designated as 'single-man operators' similarly situated. Defendant is engaged in the commercial transporting of chemicals and is a party to a collective bargaining agreement with plaintiffs' bargaining representatives, Local Unions 988 and 47, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.[1]
 
 
 7
 Plaintiffs seek to vacate a joint labormanagement committee decision. In addition, they seek damages resulting from defendant's action, based upon that decision, in allegedly failing to compensate plaintiffs pursuant to the collective bargaining agreement, Article XVII, as follows:
 
 
 8
 'Section 1. Driver's Pay will be as follows from the effective date of this agreement:
 
 
 9
 'Single-man operations: Twenty-two and one-tenth (22 1/10%) per cent of the gross freight rate not including special charges or hourly rates.'
 
 
 10
 In October of 1968, plaintiffs filed grievances with their local unions, contending that, since January 24, 1968, their employer had increased some of the gross freight rates charged to customers but had failed to pay plaintiffs the stated per cent of the increased rates. Under Article VI of the collective bargaining agreement, 'any controversy which might arise' is to be considered first by employer and the local union. Section 3 of Article VI provides:
 
 
 11
 'If the grievance is not satisfactorily adjusted by this means, the grievance will be properly filed with the established Grievance Committee and such other grievance machinery of the Southern Conference Motor Freight Agreements shall be used, provided, however, that in the event of a deadlock at the Southeast-Southwest Joint Area Committee, at the request of either party, the grievance shall be referred to the arbitrator.'[2]
 
 
 12
 Settlement of the dispute as to the proper rates failed at the local level of the grievance procedure. At that point, the unions presented plaintiffs' grievances to the Southern Conference of Teamsters Tank Line Committee, composed of three representatives chosen by the employer and three by the local unions. In effect, the grievances protested an earlier decision of the Tank Line Committee rendered on January 24, 1968, concerning a collective bargaining agreement between a different employer and a different union but containing a provision identical to that involved in the instant case. Neither plaintiffs nor defendants were present at the hearing on that date which terminated in the following decision:
 
 
 13
 'Effective this date, January 24, 1968, the percentage of the gross line haul revenue is spelled out in the contract to be based on the tariff in effect at the present time. And in the future, if a tariff is reduced, the drivers covered will suffer no reduction in gross line haul revenue. And if the tariff is increased, the drivers will receive no increase as a result.'Plaintiffs appeared and presented their views at the hearing of their grievances by the Tank Line Committee on October 16, 1968. Following the hearing, the Committee voted unanimously to apply the January 24th decision as to the meaning of the contract provision. Plaintiffs thereafter filed this suit to set aside the award.
 
 
 14
 This action is before the Court on the respective motions of plaintiffs and defendant for summary judgment. Jurisdiction exists by virtue of Section 301(a) of the Labor Management Relations Act, 29 U.S.C.A., Section 185(a). Smith v. Evening News Association, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962). This suit was properly brought as a class action, and the plaintiffs will fairly and adequately represent the interests of the class.
 
 
 15
 Plaintiffs contend that the Tank Line Committee was empowered only to interpret and apply provisions of the labor agreement and that the decision to freeze the freight rate percentages amounted to a modification or amendment of the contract in excess of its authority. Plaintiffs further allege that the local unions breached their duty of fair representation owed to plaintiffs by refusing to take the grievances to arbitration and by refusing to bring this suit, knowing that the decision was invalid. On that basis, plaintiffs assert the right to maintain suit in their own behalf.
 
 
 16
 Defendant alleges in its answer that plaintiffs have failed to state a claim upon which relief may be granted and have failed to join the local unions as indispensable parties, in view of the allegations of breach of the duty of fair representation. In its motion for summary judgment, defendant contends that the unions processed the grievances to final and binding decision and that plaintiffs are, in effect, seeking to relitigate the merits of that decision.
 
 
 17
 The unions are not indispensable parties in a suit by an employee against the employer but may be sued separately for an alleged breach of duty. Vaca v. Spies, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); Serra v. Pepsi-Cola General Bottlers, D.C.Ill., 248 F.Supp. 684 (1965). The complaint may not be dismissed on that basis. Whether plaintiffs, themselves, have standing to bring this suit is a different question.
 
 
 18
 While Smith v. Evening News Association, supra, established that jurisdiction exists in this Court to entertain a suit by an individual employee regarding personal rights under Section 301(a), clarification of standing requirements was left to subsequent cases. The problem is that of 'striking a meaningful balance, consistent with existing labor policy, between individual rights and the continued effectiveness of the collective bargaining process. Local Union No. 12, United Rubber, Cork, Linoleum & Plastic Workers of America, v. N.L.R.B., 5 Cir., 368 F.2d 12, 18 (1966).
 
 
 19
 The individual employee who claims a violation by his employer of the collective bargaining agreement is bound by the terms of that agreement as to the method of enforcing his claim. Vaca v. Spies, supra, 386 U.S. at p. 184, 87 S.Ct. 903; Miller v. Spector Freight Systems, 1 Cir., 366 F.2d 92 (1966).[3]
 
 
 20
 Where responsibility for processing disputes under a labor agreement is vested solely in the union, the employee must rely upon the union to exhaust contractual remedies in his behalf, and to enforce compliance with those remedies by the employer. Broniman v. Great Atlantic & Pacific Tea Co., 6 Cir., 353 F.2d 559 (1965); Black-Clawson Co., etc. v. International Ass'n of Mach., 2 Cir., 313 F.2d 179 (1962).[4]
 
 
 21
 The processing of disputes through contractual channels is considered part of the continuing process of collective bargaining, by which the labor agreement is given meaning and content. United Steelworkers, etc. v. Warrior & Gulf Nav. Co., 363 U.S. 574, 581, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). The employee has gained bargaining strength through representation by his union but has surrendered his right to make 'the law of the Job', and his interests are subordinated to those of the bargaining unit as a whole.[5] Thus, in its role as the exclusive agent for all employees in the bargaining unit, the union has the power to sift out frivolous grievances,[6] to abandon processing of a grievance which it determines in good faith to be meritless,[7] and to settle disputes with the employer short of arbitration.[8]
 
 
 22
 The employee has protection in the statutory duty of the union fairly to represent all its employees. Ford Motor Co. v. Huffman, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1952). The union may not arbitrarily refuse to process a meritorious grievance or process it in a perfunctory manner. Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1969). Upon proof of breach of this duty by the union, the employee may by-pass contractual remedies and maintain suit against the employer.[9]
 
 
 23
 Assuming that grievance procedures have been exhausted by the union, the individual grievant is ordinarily bound by a resulting adverse decision which is 'final' and 'binding' on the parties to the contract. Boone v. Armstrong Cork Co., 5 Cir., 384 F.2d 285 (1967); Haynes v. United States Pipe & Foundry Co., 5 Cir., 362 F.2d 414 (1966). 'Final adjustment by a method agreed upon by the parties' being the declared goal of federal labor policy,[10] courts will refuse to review the merits of such a decision.[11]
 
 
 24
 The union or the employer, as parties to the labor agreement, may sue to vacate a final award on the ground that the issue submitted was not 'arbitrable' under the contract[12] or that the arbitrator exceeded the scope of the submission.[13] Courts have not allowed an individual attack on a final award, however, except on the grounds of fraud, deceit or breach of the duty of fair representation or unless the grievance procedure was a 'sham, substantially inadequate or substantially unavailable.'[14]
 
 
 25
 In Acuff v. United Papermakers & Paperworkers, 5 Cir., 404 F.2d 169 (1968),[15] the union sued to compel arbitration by the employer. The court ordered arbitration and retained jurisdiction until the award was entered. Individual employees then sought to have the award set aside, alleging the right to intervene based upon 'inadequate representation' by the union under Rule 24(a), F.R.Civ.Proc. In dismissing the appeal from the district court's denial of the motion to intervene, the Fifth Circuit held that the union's failure to obtain a favorable award or to sue to vacate the unfavorable award could not be equated with 'inadequate representation.' In absence of an irreconcilable conflict of interest among employees of breach of duty of fair representation, the employees could not intervene. While the grounds upon which the employees sought to vacate the award were not revealed by the Court's opinion, that decision is dispositive of the instant case.
 
 
 26
 Here, the record conclusively refutes plaintiffs' contention that the local unions breached their duty of fair representation by failing to take the case to arbitration. Arbitration was available only if the Joint Committee deadlocked. Since the decision was unanimous, there was no provision for further appeal within the contractual framework, and the decision was final. As to failure of the unions to institute this suit on behalf of plaintiffs, there is no allegation as to discrimination or other improper conduct. The good faith of the union's decision not to sue cannot depend solely upon a later determination by this Court that the award was invalid, nor can plaintiffs equate the union's failure to challenge the award with bad faith.
 
 
 27
 Plaintiffs do not allege that bad faith or conflicting interests of the unions played any part in the decision of the Joint Committee, itself. As to adequacy of the proceedings, plaintiffs contend only that they were not present at the hearing on January 24, 1968. This contention is immaterial. The January 24th hearing involved a different contract between different parties, and the decision on that date was applied in plaintiff's case because the contract provisions involved were identical.
 
 
 28
 The Court is of the opinion that plaintiffs have failed to raise a genuine issue of fact, either as to breach of duty of fair representation by the union or as to substantial inadequacy of the grievance procedure. In the absence of such an issue, plaintiffs may not step into the shoes of the union to sue to vacate the award of the grounds alleged. As the Court observed in Acuff v. United Papermakers & Paperworkers, supra, at p. 171:
 
 
 29
 'It would be paradoxical in the extreme if the union, which is authorized to decide whether a grievance is to be pursued to the arbitration stage at all, could not be authorized to assume full responsibility for a grievance it did pursue, without the intervention of the individual union members immediately concerned.'
 
 
 30
 The motion for summary judgment filed by the plaintiffs will be denied, and the one filed by the defendant will be granted. It is so ordered, and judgment will be entered accordingly.
 
 
 31
 Signed, this 22nd day of July, 1970.
 
 
 32
 (s) Leo Brewster Judge
 
 
 
 *
 Memorandum Opinion hereto appended
 
 
 [1]
 The agreement became effective on October 1, 1967 and expired on March 15, 1970
 
 
 [2]
 Section 4 of Article VI defines the authority of the arbitrator as follows:
 'The arbitrator shall have the authority to apply the provisions of the Agreement and to render a decision on any grievance properly coming before him but he shall not have the authority to amend or modify this Agreement or to establish any terms or conditions of this Agreement. * * * Both parties agree to accept the decision of the Arbitrator as final and binding. * * *'
 
 
 [3]
 Where the parties have agreed upon an exclusive grievance procedure, the employee must pursue that route before seeking relief in court, and failure to exhaust his contractual remedies will constitute a defense by the employer. Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965)
 
 
 [4]
 Where only the parties to the labor agreement are given the power to invoke the grievance machinery, an individual may not sue to compel arbitration. Black-Clawson Co., etc. v. International Ass'n of Mach., supra
 
 
 [5]
 Comment: Federal Protection of Individual Rights under Labor Contracts, 73 Yale L.J. 1215, 1226 (1964)
 
 
 [6]
 Vaca v. Spies, supra, 386 U.S. at p. 191, 87 S.Ct. 903
 
 
 [7]
 O'Sullivan v. Getty Oil Co., D.C.Mass., 296 F.Supp. 272 (1969); White v. General Baking Co., D.C. New Jersey, 263 F.Supp. 264 (1964)
 
 
 [8]
 Simmons v. Union News Co., 6 Cir., 341 F.2d 531 (1965), cert. denied, 382 U.S. 884, 86 S.Ct. 165, 15 L.Ed.2d 125 (1965); Hildreth v. Union News Co., 6 Cir., 315 F.2d 548 (1963), cert. denied 375 U.S. 826, 84 S.Ct. 69, 11 L.Ed.2d 59 (1963)
 
 
 [9]
 See Vaca v. Spies, supra, as to the remedies available, against the union for breach of the duty of fair representation
 
 
 [10]
 Section 203(d), Labor Management Relations Act, 29 U.S.C.A., Section 173(d)
 
 
 [11]
 United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); United Steelworkers, etc. v. Warrior & Gulf Nav. Co., supra; United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960)
 
 
 [12]
 United Steelworkers, etc. v. Warrior & Gulf, supra, 363 U.S. at p. 582, 80 S.Ct. at p. 1352, 4 L.Ed.2d at p. 1417
 
 
 [13]
 United Steelworkers of America v. Enterprise Wheel & Car Corp., supra, note 9, 363 U.S. at p. 597, 80 S.Ct. at p. 1361, 4 L.Ed.2d at p. 1428
 
 
 [14]
 Humphrey v. Moore, supra; Bieski v. Eastern Automobile Forwarding Co., 3 Cir., 396 F.2d 32 (1968); Rothlein v. Armour & Co., 3 Cir., 391 F.2d 574 (1968). In the Rothlein and Bieski cases, conflicting interests of the union cast doubt upon the adequacy of the grievance procedures. Under the circumstances, the Third Circuit in each case closely examined the decision reached by the private decision-making body as to whether it had jurisdiction over the dispute. Humphrey v. Moore involved the additional element of breach of the duty of fair representation
 
 
 [15]
 Cert. denied, 394 U.S. 987, 89 S.Ct. 1466, 22 L.Ed.2d 762 (1969)