**Walter MALONE, Plaintiff-Appellant,**

**v.**

**UNITED STATES POSTAL SERVICE and Local 304, National Post Office Mail Handlers, Watchmen, Messengers and Group Leaders, International Union of North America, AFL–CIO, Defendants-Appellees.**

No. 74–2037.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 4, 1975.

Decided Dec. 11, 1975.

Cecil Blye, Blye & Webb, Mary Ann Webb, Louisville, Ky., for plaintiff-appellant.

George J. Long, U. S. Atty., James H. Barr, Asst. U. S. Atty., Segal, Isenberg, Sales & Stewart, Herbert L. Segal, Irwin H. Cutler, Jr., Louisville, Ky., Jules Bernstein, Washington, D. C., Robert J. Connerton, Arthur M. Schiller, Stanley A. Mestel, U. S. Postal Service, Labor Law Div., Washington, D. C., for defendants-appellee.

Before EDWARDS, CELEBREZZE and McCREE, Circuit Judges.

McCREE, Circuit Judge.

This is an appeal from a grant of summary judgment for the defendants in a suit by a former Postal Service employee for reinstatement, back pay and seniori-

ty status, and attorney's fees. Jurisdiction is conferred by 39 U.S.C. §§ 409 and 1208. Two questions are presented on appeal: (1) whether the grievance and arbitration procedures authorized in the collective bargaining agreement between the Postal Service and the national postal unions are either contrary to the Postal Reorganization Act, 39 U.S.C. § 1001, or violative of due process; and (2) whether during the grievance and arbitration procedures authorized in the collective bargaining agreement, a Postal Service employee is entitled to be represented by someone other than the duly elected collective bargaining representative.

We hold that neither the Postal Reorganization Act nor due process precludes a governmental agency and the union that represents its employees from including a grievance arbitration provision in their collective bargaining agreement where there is also an alternative procedure that provides a trial type hearing. Further, we determine that Congress did not intend to provide that a Postal Service employee may elect to be represented by someone other than the exclusive collective bargaining agent in grievance arbitration proceedings under the collective bargaining agreement. Accordingly, the district court's judgment for appellees will be affirmed.

Appellant, Walter Malone, was employed as a mail handler in the Louisville Post Office, where he was a preference eligible nonprobationary veteran with approximately eighteen years of federal service. Appellees are the United States Postal Service ("the Postal Service") and Local 304 of the National Post Office Mail Handlers, Watchmen, Messengers, and Group Leaders Division of the Laborers' International Union of North America ("the Union"). The Union has been recognized in accordance with 39 U.S.C. § 1203 as the exclusive representative of the employees in the mail handlers unit. Malone was not a member of the Union, although it represented his employment unit for the purposes of collective bargaining. Pursuant to 39 U.S.C. § 1206 the Postal Service and the Union executed a collective bargaining agreement which included a grievance and arbitration provision. Article XVI, Section 6 of the agreement provided:

SECTION 6. VETERANS' PREFERENCE. A preference eligible is not hereunder deprived of whatever rights of appeal he may have under the Veterans' Preference Act, but he must exercise his option before invoking the grievance procedure, and if he appeals under the Veterans' Preference Act, he thereby waives all redress under this Agreement.

On May 6, 1972 Malone committed what the Postal Service regarded as an act of insubordination, and on May 12 he was notified of the Service's intention to discharge him for failure to obey orders. The notice advised Malone of the reasons upon which the discharge was to be based: his refusal to follow his supervisor's instructions and orders on May 6, and his past disciplinary record which included five previous suspensions for insubordination. The notice was read aloud to Malone when he refused to accept a copy of it. The notice informed him of his rights to proceed under the grievance arbitration provision of the collective bargaining agreement, and quoted Section 6, *supra,* concerning rights of appeal for preference eligible veterans stating:

Your attention is further directed to the fact that, in accordance with Section 2 of Article XV of the National Agreement, you have 5 days from the date of this notice in which to file a grievance concerning this action and therefore you must exercise the option specified in Section 6 [the Veterans' Preference Section] above within said period and inform the undersigned of your option.

Malone did not appeal to the Civil Service Commission under the Veterans' Preference Act. Instead he filed a Step 1 grievance in accordance with the procedures specified in the collective bargaining agreement. In Step 1, the em-

ployee, who may be accompanied by his steward or a union representative, must discuss his complaint with his supervisor within 5 days after learning of its cause.[1] Malone, accompanied by his union representative, timely discussed his grievance with the operations manager, who denied the grievance.

The Union has the right to appeal the denial of a Step 1 grievance to Step 2 by making a written appeal to the head of the installation.[2] The Union timely filed a written Step 2 grievance, which was also denied.

The next stage for grievances involving disciplinary actions is Step 2b, an appeal in writing to the Director of Employee Relations in the Regional Office, who is required to hold a hearing "at the management level higher than the installation level." If the grievance is denied again, the Union can refer the grievance to arbitration.[3]

The Union timely filed a written grievance with the Regional Director. Approximately 6 months later, on January 10, 1973, Malone informed the Postal Service that Attorney Cecil Blye was his representative in the pending proceedings. On February 2, 1973, the Postal

Service replied that only an authorized agent of the Union, the exclusive bargaining representative, could represent Malone. On February 20, representatives of the Union and the Postal Service met, and appellant's grievance was denied. Malone was not given notice of this meeting, and was not present. On February 22, the Regional Director sent a letter to the Union denying Malone's grievance. The Union did not elect to arbitrate.

On May 11, 1973, the Postal Service informed Malone by letter that he had been dropped from the rolls and removed from the Service. Malone asserts that he never received notice from the Union that his grievance had been denied.

Malone contends that at some point in the grievance proceedings he was entitled to a trial type hearing with the opportunity to be present, to meet the evidence against him, and to confront and to cross-examine witnesses. He also contends that he was entitled to have his attorney, not the Union, represent him in the grievance proceedings.

The district court held that Malone had "several opportunities to personally present his side of the controversy" and

1. Article XV, Section 2 of the collective bargaining agreement provides:

    Step 1: The employee must discuss the complaint with his immediate supervisor within five (5) days of when the employee or Union has learned or may reasonably have been expected to have learned of its cause. The employee may be accompanied by his steward or a union representative, if he so desires. The supervisor shall render a decision within two (2) days. The Union shall be entitled to appeal an adverse decision in Step Two of the grievance procedure within five (5) days after receipt of the Employer's decision.

2. The agreement provides:

    Step 2: a. Such appeal shall be made in writing to the head of the installation, or his designee. The employee shall be represented by a steward or a union representative. A decision by the Employer regarding the grievance shall be rendered within five (5) days after it has been appealed to Step Two. The Union shall be entitled to appeal an adverse decision to Step Three of the grievance

procedure within ten (10) days after receipt of the Employer's decision, except for the subjects specified in Step Two b.

3. Step 2b provides:

    b. In the absence of settlement through Step Two a, grievances involving the subject of disciplinary action taken against an employee or the discharge of an employee may not be submitted to Step Three or Four, but may be appealed in writing to the Director of Employee Relations in the Regional Office within ten (10) days after receipt of the Employer's decision. The Director shall provide a hearing at a management level higher than the installation level and at a location convenient to the parties. *The employee may be represented by an area or regional Union representative,* and the Employer's decision shall be rendered within seven (7) days after the grievance has been appealed to this step. If there is no settlement at this step, the Union shall be entitled to refer the grievance direct to arbitration within fifteen (15) days, and in accordance with the arbitration procedure. [Emphasis added].

that he had been given a "fair hearing" satisfying the Postal Reorganization Act, due process, and the collective bargaining agreement. It stated that under *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974),

> an employee, like Mr. Malone, has no "property" interest in his job other than that which he is granted by his contract, he has no due process rights in connection with his job outside of those guaranteed by his contract.

Further, the court found that Malone was not entitled to be represented by his attorney, instead of the Union, in the grievance arbitration proceedings. The court held that the employees' section 1001 right to "representatives of their own choosing" was derived from the National Labor Relations Act, 29 U.S.C. § 159, and that in both statutes the phrase referred to the exclusive bargaining representative chosen by a majority of the employees. The court also held that Malone had not been denied his rights as a preference eligible veteran since he had made no effort to appeal to the Civil Service Commission. Finally, although the collective bargaining agreement provided that the right to elect the grievance procedure was waived once an employee initiated an appeal in accordance with the Civil Service procedures, the agreement did not expressly provide that preference eligible veterans' benefits are waived if the grievance procedure is pursued. The court suggested that Malone might still be able to pursue his veteran's preference remedies.

### THE 39 U.S.C. § 1001 REQUIREMENT OF A "FAIR HEARING"

■ Malone's first argument is that a trial type hearing is required by 39 U.S.C. § 1001, which provides:

> The Postal Service shall establish procedures, in accordance with this title, to assure its officers and employees meaningful opportunities for promotion and career development and to assure its officers and employees full protection of their employment rights

> by guaranteeing them an opportunity for a fair hearing on adverse actions, with representatives of their own choosing. [Emphasis added].

We do not agree with the contention that this section requires that any grievance arbitration procedures included in a Postal Service collective bargaining agreement *must* provide for a trial type hearing. To the contrary, the Postal Reorganization Act indicates congressional authorization of a system where a preference eligible veteran employee has the option *either* to pursue grievance arbitration procedures, *or* to appeal first within the Postal Service and ultimately to the Civil Service Commission. In the latter case the employee is entitled to a trial type hearing, which would afford increased procedural safeguards including the choice of counsel, but possibly at the cost of substantial delay. In grievance arbitration proceedings, on the other hand, the advantage to the employee is the greater speed and flexibility of the proceedings. However, the employee also foregoes some procedural safeguards associated with a trial type hearing, and surrenders to the Union a large measure of control over the prosecution of his claim. In this congressional scheme, the employee has the opportunity to select the procedure best suited to his situation.

The Postal Reorganization Act, in accord with the strong federal policy that evolved under the National Labor Relations Act, expressly authorized the adoption of grievance arbitration provisions in Postal Service collective bargaining agreements. This express authorization supports the conclusion that section 1001 was not intended to *preclude* the resolution of a grievance like Malone's by grievance procedures, without a trial type hearing.

In enacting the Postal Reorganization Act, Congress recognized that "no single need is more insistent than that for the reform of the labor-management structure." The method chosen for reform was to "bring postal labor relations within the same structure that exists for na-

tionwide enterprises in the private sector." 2 U.S.Code Cong. and Admin. News 1970, pp. 3649, 3662. Pursuant to this goal, Congress enacted 39 U.S.C. § 1209(a), which provides:

> Employee-management relations shall, to the extent not inconsistent with provisions of this title, be subject to the provision of subchapter II of chapter 7 of title 29. [The National Labor Relations Act.]

One of the reforms adopted in the Postal Reorganization Act was a provision permitting the adoption of grievance arbitration procedures. 39 U.S.C. § 1206(b) provides:

> (b) Collective-bargaining agreements between the Postal Service and bargaining representatives recognized under section 1203 may include any procedures for resolution by the parties of grievances and adverse actions arising under the agreement, including procedures culminating in binding third-party arbitration, or the parties may adopt any such procedures by mutual agreement in the event of a dispute.

In the National Labor Relations Act, Congress explicitly recognized the strong federal policy favoring the settlement of labor-management disputes by grievance arbitration procedures adopted by the parties. Section 203(d) of the Act, 29 U.S.C. § 173(d) states:

> Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement.

The Supreme Court has likewise recognized the central role of grievance and arbitration procedures in the private sector. *E. g., United Steelworkers of America v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957).

Moreover, there is also an opportunity under the Postal Reorganization Act for an employee to prosecute a grievance like Malone's at a trial type hearing. 39 U.S.C. § 1005 provides generally that "the provisions of chapter 75 of title 5 shall apply to officers and employees of the Postal Service . . . ." Chapter 75 of Title 5 includes the provisions, including hearing requirements, for agency actions adverse to government employees. Moreover, 39 U.S.C. § 1005(a)(2) provides that the provisions of Title 5 relating to preference eligible employees (as defined in 5 U.S.C. § 2108):

> shall apply to . . . any officer or employee of the Postal Service in the same manner and under the same conditions as if the . . . officer, or employee were subject to the competitive service under such title.

Title 5, which is thus applicable to the Postal Service, provides that a preference eligible employee is entitled to 30 days' advance written notice stating the reason for proposed agency action adverse to him, a reasonable time for "answering the notice personally and in writing and for furnishing affidavits," and notice of an adverse decision, 5 U.S.C. § 7512. Further, a preference eligible veteran is entitled to appeal an adverse decision of the Civil Service Commission. 5 U.S.C. § 7701. The Civil Service Commission regulations in effect at the time in question provided for a hearing at the agency level, 5 C.F.R. 771.208(a), with testimony under oath or affirmation. 5 C.F.R. 771.210. Both parties had the right to produce witnesses. 5 C.F.R. 771.211. Further, these regulations also provided for a Civil Service hearing where "appellant is entitled to appear . . . personally or through or by his representative." 5 C.F.R. 772.305(c)(1). Both parties had the right to introduce evidence, and to

produce and cross-examine witnesses. 5 C.F.R. 772.305.

The Postal Reorganization Act provides that the adoption of a collective bargaining agreement including a grievance arbitration provision, without more, does not render the provisions of Title 5 inapplicable to Postal Service employees. 39 U.S.C. § 1005 provides that the provisions of Title 5, Chapter 75 are applicable to officers and employees of the Postal Service

*except to the extent of any inconsistency with—*

  (A) *the provisions of any collective-bargaining agreement* negotiated on behalf of and applicable to them; or

  (B) procedures established by the Postal Service and approved by the Civil Service Commission. [Emphasis added].

More specifically, 39 U.S.C. § 1005(a)(2) provides that the Title 5 provisions relating to preference eligibles apply to the Postal Service, and that these provisions *"shall not be modified by . . . any collective-bargaining agreement* entered into under chapter 12 of this title." [Emphasis added].

These hearing and appeal provisions are not inconsistent with the collective bargaining agreement in question. 39 U.S.C. § 1206(b) expressly provides that collective bargaining agreements may include grievance arbitration procedures, despite the fact that the provisions of 5 U.S.C. § 7512 requiring a hearing for a preference eligible under § 1005(b) *cannot* be modified by any collective bargaining agreement. Article XVI section 6 of the collective bargaining agreement is one permissible resolution of the statutory requirement that a hearing be available although grievance arbitration procedures may also be adopted if the parties to the collective bargaining agreement wish. Article XVI section 6 recognizes that the grievance arbitration procedure does not supplant the hearing

and appeal provisions in Title 5, it merely provides an additional method by which employee-Postal Service disputes may be settled.

Thus we find no inconsistency between the grievance arbitration procedures used here and the requirement of 39 U.S.C. § 1001 that the Postal Service afford its employees a "fair hearing" on adverse actions.

### DUE PROCESS

■ Malone also argues that the grievance arbitration proceedings did not meet the constitutional standards of due process. A more difficult question would be presented if Malone had been given no opportunity to have an evidentiary hearing on the issue of his discharge. But, as noted above, after Malone was advised of the alternative procedure available to him as a preference eligible veteran (which included a hearing before the Civil Service Commission) he nevertheless chose to file a grievance. Certainly due process does not require a postal employee to have a hearing on his discharge if he does not want one, and it therefore does not forbid the Postal Service and the unions that represent the Postal employees from setting up an *optional* grievance arbitration procedure to settle employee grievances. A litigant may voluntarily forego his right to a jury trial, or to present witnesses, or even to be present at his own trial, without offending due process. We hold that a Postal employee may likewise voluntarily choose speedier and less expensive grievance proceedings in preference to trial type hearings before the Civil Service Commission.

Since we find that Malone voluntarily submitted his claim to the grievance procedure in preference to seeking a Civil Service appeal, we have no occasion to consider whether the procedures described in 5 U.S.C. §§ 7512, 7701, and in C.F.R. 772.305 satisfy due process in all respects.[4]

4. The Supreme Court recently upheld the validity of 5 U.S.C. § 7501, the provision dealing with nonpreference eligible employees, in a different context. *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). The question presented in *Arnett* was whether due process required a *pretermination* hearing.

## MALONE'S RIGHT TO HAVE A REPRESENTATIVE OF HIS "OWN CHOOSING"

Malone's final contention is that 39 U.S.C. § 1001 entitled him to have his attorney instead of the Union represent him in the proceedings relating to his discharge. Section 1001 requires the Postal Service to give its employees a fair hearing on adverse actions "with representatives of their own choosing."

In view of Congress' intent to make the National Labor Relations Act, which evidences a strong policy in favor of the settlement of labor disputes by grievance and arbitration, applicable to the Postal Service, our analysis of section 1001 should be guided by the principles that developed under the National Labor Relations Act.

■ We hold that neither the National Labor Relations Act, nor the Postal Reorganization Act require an employer to meet with any representative of an employee other than the exclusive bargaining representative in order to settle an employee grievance. Of course, whether a collective bargaining agreement guarantees an employee the right to be represented in grievance proceedings by someone other than the exclusive bargaining representative, and whether the employer is permitted to deal with anyone other than the exclusive bargaining representative in the settlement of grievances present entirely different questions.

In interpreting the National Labor Relations Act, the federal courts have held that in the absence of a provision in the collective bargaining agreement to the contrary, an employer has no duty to meet with individual employees (in contrast to the union) for the purpose of settling a grievance. Section 9(a) of the Act, 29 U.S.C. § 159(a) provides:

(a) Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment: *Provided,* That any individual employee or a group of employees shall have the right at any time to present grievances to their employer and to have such grievances adjusted, without the intervention of the bargaining representative, as long as the adjustment is not inconsistent with the terms of a collective-bargaining contract or agreement then in effect: *Provided further,* That the bargaining representative has been given opportunity to be present at such adjustment.

In *Broniman v. Great Atlantic & Pacific Tea Co.,* 353 F.2d 559, 562 (6th Cir. 1965) an employee brought a § 301 suit to compel his employer under the authority of § 9(a) to meet with him to adjust his grievance. We held that under Section 9(a):

The employer is not required to meet for the purpose of adjusting a grievance. The statute provides a permissible step in adjustment, not a required one. In other words, this section of the statute grants a privilege to the employee. He may or may not take his grievance directly to the employer, as he chooses. If he takes his grievance directly to the employer, the employer may not wish to attempt to make an adjustment in the absence of the union representative and he cannot be compelled to do so. There could be good reason for this.

We specifically approved of the Second Circuit's reasoning in *Black-Clawson Co., Inc. v. Machinists Lodge 355,* 313 F.2d 179, 185 (2d Cir. 1962):

"It seems clear, therefore, that rather than conferring an indefeasible right upon the individual employee to compel compliance with the grievance procedure up to and including any arbitration provision, section 9(a) merely set up a buffer between the employee and his union, 'permitting' the employee to take his grievances to the em-

ployer, and 'authorizing' the employer to hear and adjust them without running afoul of the 'exclusive bargaining representative' language of the operative portion of section 9(a)."

Since section 9(a) does not give an employee the right to compel his employer to meet with him to adjust his grievance, where the collective bargaining agreement gives the Union sole control of the grievance machinery, the employee must rely upon the Union to exhaust his contractual remedies. *Black-Clawson Co., Inc. v. Machinists Lodge 355, supra, Harris v. Chemical Leaman Tank Lines, Inc.,* 437 F.2d 167 (5th Cir. 1971).

Here the collective bargaining agreement did not grant Malone the right to be represented by someone other than the Union. Article XV, Section 2, Step 2b provides, *inter alia:*

> The Director shall provide a hearing at a management level higher than the installation level and at a location convenient to the parties. *The employee may be represented by an area or regional Union representative. . . .* [Emphasis added].

When Malone informed the Postal Service that Mr. Blye represented him in the proceedings relating to his discharge, the Postal Service responded that it would deal with no one other than the exclusive bargaining representative. We hold that neither section 9(a) nor the collective bargaining agreement required the Postal Service to meet with Malone and his attorney, instead of with the Union which was the exclusive bargaining representative to adjust Malone's grievance.

Section 1001 does not compel a different result. As a threshold matter, the primary, if not the only, application of section 1001 is the regulation of the agency and Civil Service Appeal portion of the dual system Congress authorized for the settlement of labor-management disputes subject to the Postal Reorganization Act. As we stated above, Congress not only required that employees be given an opportunity for a fair hearing, and made the hearing requirements

for preference eligible veterans specifically applicable to postal employees, but it also *permitted* the parties to a Postal Service collective bargaining agreement to include a grievance arbitration clause.

The hearing requirement of section 1001 is directed at the required agency and Civil Service appeals procedures, not at grievance arbitration procedures that might be adopted in a collective bargaining agreement. Similar language regarding the employee's right of representation is found in the regulations governing the agency and Civil Service appeals.

■ But assuming that section 1001 applies to grievance arbitration procedures as well, when the phrase "representatives of their own choosing" is used in the context of grievance procedures authorized in a collective bargaining agreement, we hold that it refers to the exclusive bargaining representative of the employment unit.

The phrase "representatives of their own choosing" as a specialized meaning of the labor-management field. Section 7 of the National Labor Relations Act, 29 U.S.C. § 157 provides:

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title.

In addition, section 9(a) states that the "[r]epresentatives designated or selected for the purposes of collective bargaining by the majority of the employees" are to be the "*exclusive representatives of all the employees in such unit* for the purposes of collective bargaining in respect to rates of pay, wages, hours of employ-

ment, or other conditions of employment . . . ." [Emphasis added].

■ The Union's status as the exclusive bargaining representative of all the employees in the unit requires the employer to negotiate with the union, and not with anyone else on behalf of the employees. *Medo Photo Supply Co. v. N. L. R. B.,* 321 U.S. 678, 683–85, 64 S.Ct. 830, 88 L.Ed. 1007 (1944).

■ The grievance procedure is recognized as an integral part of the collective bargaining process. For example, in *United States Steelworkers v. Warrior & Gulf Navigation Co., supra,* the Supreme Court stated:

> The processing of disputes through the grievance machinery is actually a vehicle by which meaning and content are given to the collective bargaining agreement. . . . The grievance procedure is, in other words, a part of the continuous collective bargaining process. 363 U.S. 581, 80 S.Ct. 1352.

The Supreme Court has also recognized the union's interest in representing the employees in grievance proceedings. In *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 653, 85 S.Ct. 614, 616, 13 S.E.2d 580 (1965), the Court stated:

> Congress has expressly approved contract grievance procedures as a preferred method for settling disputes and stabilizing the "common law" of the plant. LMRA § 203(d), 29 U.S.C. § 173(d); § 201(c), 29 U.S.C. § 171(c) (1958 ed.). *Union interest in prosecuting employees grievances is clear. Such activity complements the union's status as exclusive bargaining representative by permitting it to participate actively in the continuing administration of the contract. In addition, conscientious handling of grievance claims will enhance the union's prestige with employees.* Employer interests, for their part, are served by limiting the choice of remedies available to aggrieved employees. And it cannot be said in the normal situation, that contract grievance procedures are inadequate to protect the interests of

an aggrieved employee until the employee has attempted to implement the procedures and found them so. [Emphasis added].

More recently, in *Vaca v. Sipes,* 386 U.S. 171, 191–192, 87 S.Ct. 903, 917, 17 L.Ed.2d 842 (1969) the Court reasoned:

> In providing for a grievance and arbitration procedure which gives the union discretion to supervise the grievance machinery and to invoke arbitration, the employer and the union contemplate that each will endeavor in good faith to settle grievances short of arbitration. Through this settlement process, frivolous grievances are ended prior to the most costly and time-consuming step in the grievance procedures. Moreover, both sides are assured that similar complaints will be treated consistently, and major problem areas in the interpretation of the collective bargaining contract can be isolated and perhaps resolved. And finally, the settlement process furthers the interest of the union as statutory agent and as coauthor of the bargaining agreement in representing the employees in the enforcement of that agreement. See Cox, Rights Under a Labor Agreement, 69 Harv.L.Rev. 601 (1956).

If the individual employee could compel arbitration of his grievance regardless of its merit, the settlement machinery provided by the contract would be substantially undermined, thus destroying the employer's confidence in the union's authority and returning the individual grievant to the vagaries of independent and unsystematic negotiation. Moreover, under such a rule, a significantly greater number of grievances would proceed to arbitration. This would greatly increase the cost of the grievance machinery and could so overburden the arbitration process as to prevent it from functioning successfully. See *NLRB v. Acme Industrial Co.,* 385 U.S. 432, 438 [87 S.Ct. 565, 569, 17 L.Ed.2d 495]; Ross, Distressed Grievance Procedures and Their Rehabilitation, in

Labor Arbitration and Industrial Change, Proceedings of the 16th Annual Meeting, National Academy of Arbitrators 104 (1963). It can well be doubted whether the parties to collective bargaining agreements would long continue to provide for detailed grievance and arbitration procedures of the kind encouraged by L.M.R.A. § 203(d), *supra,* if their power to settle the majority of grievances short of the costlier and more time-consuming steps was limited by a rule permitting the grievant unilaterally to invoke arbitration. [Footnote omitted].

The Second Circuit expounded a similar view, stating that allowing the union to handle employee grievances represents "a sound view of labor-management relations." In *Black-Clawson Co., Inc. v. Machinists Lodge 355, supra,* the court stated:

The union represents the employees for the purposes of negotiating and enforcing the terms of the collective bargaining agreement. This is the modern means of bringing about industrial peace and channeling the resolution of intra-plant disputes. Chaos would result if every disenchanted employee, every disturbed employee, and every employee who harbored a dislike for his employer, could harass both the union and the employer by processing grievances through the various steps of the grievance procedure and ultimately by bringing an action to compel arbitration in the face of clear contractual provisions intended to channel the enforcement remedy through the union. . . . "A union's right to screen grievances and to press only those it concludes should be pressed is a valuable right * * *," *Ostrofsky v. United Steelworkers* [D.C.Md.], 171 F.Supp. [782] at 790, and inures to the benefit of all of the employees. 313 F.2d 186.

We therefore hold that the inclusion in the Postal Reorganization Act of the phrase "representatives of their own choosing," in the context of grievance arbitration proceedings authorized in a collective bargaining agreement, refers to the exclusive bargaining representative. Congress adopted this language with the knowledge that the federal courts had construed identical language in the National Labor Relations Act as indicative of a federal policy that the exclusive bargaining representative has the right to represent employees in grievance arbitration proceedings, subject to its duty of fair representation. We believe that Congress, which made Postal Service labor relations generally subject to the National Labor Relations Act, intended this phrase to receive the same interpretation in the Postal Reorganization Act as it had been accorded in the National Labor Relations Act.

This interpretation is consistent with that of the National Labor Relations Board in *United States Postal Service,* 208 NLRB No. 58 (1974), and with that of a three-judge district court in *National Postal Union v. Blount,* 341 F.Supp. 370 (D.D.C.1972), *aff'd,* without opinion, 409 U.S. 808, 93 S.Ct. 67, 34 L.Ed.2d 69.

We do not think that requiring a Postal Service employee who elects to pursue a grievance procedure created in a collective bargaining agreement to allow *the Union* to process his grievance, exclusive of his active participation, unfairly prejudices the employee who also has the option of pursuing an agency and Civil Service appeal. If he chooses to pursue the grievance procedure, the Union is subject to the duty of fair representation in handling his grievance.

The Supreme Court in *Vaca v. Sipes, supra,* described the union's duty as follows:

Under this doctrine, the exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct. *Humphrey v. Moore,* 375 U.S., [335] at 342 [84 S.Ct. 363, at 367, 11 L.Ed.2d 370]. 386 U.S. 177, 87 S.Ct. 910.

It concluded that the union's "duty of fair representation has stood as a bulwark to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor law." 386 U.S. 182, 87 S.Ct. 912. Thus an employee is not bound if the union's handling of his grievance is marked by malice, bad faith, or arbitrariness. Moreover, we recently held that if the union negligently fails to take any action at all to process an employee's grievance, it has breached the duty of fair representation. *Ruzicka v. General Motors Corporation,* 523 F.2d 306 (6th Cir. 1975).

But no allegation of such a breach of the duty of fair representation was made in the case before us. Claims that the Union representatives were "pitifully unequal to the battery of legal scholars and legal experts who represent the Postal Service in adverse proceedings" do not justify disregarding the Union's status as the exclusive bargaining representative of the employees.

Accordingly, the judgment of the district court will be affirmed.

EDWARDS, Circuit Judge (concurring).

I concur in the result reached in the opinion of the court.