**Eloise TUFTS, Plaintiff,**

v.

**The UNITED STATES POSTAL SERVICE, et al., Defendants.**

**No. C75–563.**

United States District Court,
N. D. Ohio, E. D.

Dec. 14, 1976.

---

5. Petitioner King makes no double jeopardy claim based on the Fifth Amendment to the United States Constitution.

James M. Mancini, Cleveland, Ohio, for plaintiff.

Joseph A. Cipollone, Asst. U. S. Atty., Cleveland, Ohio, for defendants.

## ORDER

MANOS, District Judge.

This is an action instituted pursuant to the Due Process Clause of the Fifth Amendment and the Civil Rights Act of 1866, 42 U.S.C. § 1981, wherein the plaintiff, Eloise Tufts, seeks reinstatement to her position as a distribution clerk at the United States Postal Service (USPS), asserting that the defendants unlawfully terminated her on July 3, 1973. She also seeks back pay, declaratory and injunctive relief, and punitive damages. Jurisdiction is invoked pursuant to 28 U.S.C. § 1331.[1]

Defendants move to dismiss the action pursuant to Rule 12(b)(1). Fed.R.Civ.P., for lack of subject matter jurisdiction. They argue that the grievance-arbitration procedures set forth in her union's collective bargaining agreement constitute the plaintiff's sole remedy for challenging her discharge; that she failed to properly exhaust her grievance remedy; and therefore this Court lacks subject matter jurisdiction of the plaintiff's complaint and should dismiss the claim under Fed.R.Civ.P. 12(b)(1). The defendants also renew their earlier motion, based on Fed.R.Civ.P. 21, to dismiss defendants Gene Scott, Clarence Gels and Earl Clark on the ground that they are misjoined parties because of official immunity. Alternatively, defendants seek summary judgment, pursuant to Rule 56, Fed.R.Civ.P. The Court treats the defendants' motion as one for summary judgment because both parties presented "matters outside the pleadings." Fed.R.Civ.P. 12(b).

In support of her claims plaintiff states[2] that she became ill in January, 1973, and being unable to work, requested a leave of absence from her employer, USPS. Although said request was initially denied, upon submission of a doctor's certificate, plaintiff was granted leave.

On February 21, 1973, plaintiff received a letter from USPS notifying her that she was absent without leave as of February 11,

---

1. The amount in controversy exceeds $10,000 exclusive of interests and costs. *See* Sell's Affidavit, p. 1, attached to defendants' motion to dismiss filed December 15, 1975.

2. *See,* Tufts' Affidavit, Exhibit 7, pp. 1–3, attached to her brief, filed on January 16, 1976, in opposition to the defendants' motion to dismiss.

1973.[3] Enclosed therein was a Form 3971 (Request for, or Notification of Absence) which plaintiff avers she completed, requesting an additional six months leave without pay, and submitting in support thereof a doctor's certificate attesting to her acute anemia.

Plaintiff states that, because she received no further communication from USPS regarding the requested leave and also continued to receive paychecks until April, 1973, she assumed the leave had been granted.[4] However on June 1, 1973 plaintiff received a 30-day advance notice of termination. That notice pertinently provided:

"Your attention is directed to the fact that, in accordance with Section 2 of Article XV of the National Agreement, you have 5 days from the date of this notice in which to file a grievance concerning this action." See Exhibit G, attached to defendants' December 15, 1975 motion to dismiss.

The plaintiff asserts that she contacted her union representative, Lee Ikner, who suggested that she submit a doctor's certificate to excuse her absence. Nothing in this record suggests that Ikner advised her to file a grievance and that failure to do so would waive her rights to challenge her discharge.[5]

On or about June 7, 1973 Tufts presented postal management with a doctor's certificate which stated that she was under medical care for severe anemia and "must remain off work for approx. 8 mos."[6] On the same date, the Postal Service requested a laboratory blood test for the plaintiff which was supplied on or about June 25, 1973. After examining the results of the blood test the Postal Service's medical officer found Tufts' blood count to be normal and reported this finding to the Cleveland postal management.[7] The postal authorities then issued a formal personal action, Form 50, terminating Tufts' employment effective July 3, 1973.[8]

The record does not show that Tufts filed a grievance pursuant to her collective bargaining agreement, between June 1, 1973 and June 6, 1973. Subsequent to her termination Tufts filed a charge against her union and the Postal Service with the National Labor Relations Board which was ulti-

---

**3.** See Exhibit A, attached to Tufts' brief, filed on January 16, 1976, in opposition to the defendants' motion to dismiss.

**4.** See, Tufts' Affidavit, Exhibit 7, p. 1, attached to her brief, filed January 16, 1976, in opposition to the defendants' motion to dismiss. See also Sell's Affidavit, pp. 1–2, attached to defendants' motion to dismiss filed on December 15, 1975.

**5.** See, Ikner's Affidavit, p. 2, attached to the defendants' December 15, 1973 motion to dismiss; Tufts' Affidavit, Exhibit 7, p. 1, attached to the plaintiff's brief, filed on January 16, 1976, opposing the defendants' motion to dismiss.

Article XV of the Union contract deals with Grievance Procedures. Sections 1 and 2 of that Article pertinently provide:

"When an employee . . . believes that the Employer has violated the terms of this Agreement . . . the employee or the Union *shall be required to follow the procedure set forth below* . . . ..

" . . .

"*The employee must discuss the complaint with his immediate supervisor within five (5) days* of when the employee or Union has learned . . . of its cause." See, Exhibit A, p. 1, attached to the defendants' renewed motion to dismiss, filed July 23, 1976. (emphasis added).

**6.** See, Sell's Affidavit, p. 2, and Exhibit H, both of which are attached to the defendants' motion to dismiss dated December 15, 1975; Tufts' Affidavit, Exhibit 7, p. 2, attached to her brief, filed on January 16, 1976, opposing the *defendants' motion to dismiss. In her complaint at ¶ 9 Tufts makes certain allegations regarding what she was told by the Postal Service's benefits officer, Mr. Loeb. However, the record contains no affidavits verifying her factual allegations regarding the statements. Tufts' allegations with respect to Loeb are contradicted by Ikner's Affidavit, pp. 1–2, attached to the defendants' motion to dismiss filed on December 15, 1975. Consequently the Court cannot rely upon the facts expressed in ¶ 9 of the complaint. See, Fed.R.Civ.P. 56(c), (e).

**7.** See, Samuel Pastorelle's Affidavit, p. 1, and Sell's Affidavit, Exhibit I, both of which are attached to the *defendants' motion to dismiss* filed on December 15, 1976.

**8.** See, Sell's Affidavit, Exhibit J, attached to the defendants' motion to dismiss filed on December 15, 1976.

mately denied on November 5, 1973 because of her failure to timely file a grievance pursuant to her collective bargaining agreement.[9]

On September 24, 1973, plaintiff Tufts contacted the Cleveland Post Office Equal Employment Opportunity (EEO) counselor and thereafter filed, on November 5, 1973, a formal complaint of race discrimination, in violation of 42 U.S.C. §§ 2000e *et seq.* with the USPS central regional office. That complaint was rejected on January 16, 1974, for untimely filing pursuant to 5 C.F.R. § 713 *et seq.* and no further appeal was taken.[10]

The defendants' rendition of these events is markedly different on several points. First, they note that the leave requested by Tufts in January was granted, pursuant to her doctor's certificate, only until February 26, 1973.[11]

They also affirmatively assert that plaintiff was told by Samuel Pastorelle on June 7th that her leave was dependent upon the verification of her doctor's certificate by the laboratory analysis. Further, they contend that, pursuant to the doctor's certificate submitted on June 7, plaintiff was seeking an additional eight-month leave.[12]

At the outset, defendants challenge the Court's subject matter jurisdiction over this action, asserting that the unique character of defendant USPS precludes invocation of jurisdiction pursuant to any of the jurisdictional statutes pleaded by plaintiff, to-wit: 5 U.S.C. § 702; 28 U.S.C. §§ 1331, 1339; 1343(4); and 39 U.S.C. § 409(a).

## I.

## TUFTS' 42 U.S.C. § 1981 CLAIM MUST BE DENIED

The plaintiff's complaint asserts that she was discriminated against because of her race and that she is entitled to equitable relief under 42 U.S.C. § 1981. This cause of action is precluded by the United States Supreme Court's decision in *Brown v. General Services Administration,* 425 U.S. 820, 832, 96 S.Ct. 1961, 1968–69, 48 L.Ed.2d 402 (1976) which held that 42 U.S.C. §§ 2000e *et seq.* comprise a federal employee's exclusive remedy for race discrimination in employment. The Court grants summary judgment for the defendants on Tufts' § 1981 claim, because that claim is preempted by § 2000e *et seq.* under the *Brown* doctrine.

## II.

## TUFTS' FIFTH AMENDMENT DUE PROCESS CLAIM LACKS MERIT

The plaintiff argues that she was denied due process of law under the Fifth Amendment to the United States Constitution because she was arbitrarily discharged from employment in the federal government without any type of a fair hearing. Constitutional due process requires governmental agencies to furnish citizens an opportunity for a fair hearing to make non-frivolous challenges to a deprivation of a cognizable liberty or property interest. *See, St. Louis Iron Mountain and Southern Railway Company v. Williams,* 251 U.S. 63, 64–65, 40 S.Ct. 71, 64 L.Ed. 139 (1919) (Justice Van Devanter); *Ex Parte Young,* 209 U.S. 123, 147–148, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Anniston Mfg. Co. v. Davis,* 301 U.S. 337, 341–343, 351–353, 57 S.Ct. 816, 81

---

9. *See,* Sell's Affidavit, Exhibits L, M, attached to the defendants' motion to dismiss filed on December 15, 1975. The Court notes that for some unexplained reason the NLRB found that Tufts failed to file her grievance within "the *fourteen-day* filing period specified in the collective bargaining contract." *See,* Exhibit M, *supra* (emphasis added). Of course the allotted time for bringing the grievance was *five* days under the collective bargaining agreement. *See,* Exhibit A, p. 1, attached to the defendants' renewed motion to dismiss filed July 23, 1976.

10. *See,* Exhibits N–U, attached to Sell's Affidavit which is attached to the defendants' motion to dismiss filed December 15, 1975.

11. *See,* Sell's Affidavit, p. 1, attached to the defendants' motion to dismiss filed on December 15, 1975.

12. *See,* Pastorelle's Affidavit, p. 1, attached to the defendants' motion to dismiss filed on December 15, 1976.

L.Ed. 1143 (1937); *Central of Georgia R. R. v. Wright,* 207 U.S. 127, 136, 138–142, 28 S.Ct. 47, 52 L.Ed. 134 (1907); *Brinkerhoff-Faris Co. v. Hill,* 281 U.S. 673, 682, 50 S.Ct. 451, 74 L.Ed. 1107 (1930); *Societe Internationale v. Rogers,* 357 U.S. 197, 210–211, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1957); *Stoehr v. Wallace,* 255 U.S. 239, 245–246, 41 S.Ct. 293, 65 L.Ed. 604 (1921); *Oesterich v. Selective Service,* 393 U.S. 233, 243–244, fn. 6, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968) (Harlan, J.); *United States v. Illinois Central R. R.,* 291 U.S. 457, 463, 54 S.Ct. 471, 78 L.Ed. 909 (1934); *Opp Cotton Mills v. Administration,* 312 U.S. 126, 152–153, 61 S.Ct. 524, 85 L.Ed. 624 (1941); *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965); *Boddie v. Connecticut,* 401 U.S. 371, 378, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); *Wadley Southern Railway v. Georgia,* 235 U.S. 651, 669, 35 S.Ct. 214, 59 L.Ed. 405 (1915); *Oklahoma Operating Co. v. Love,* 252 U.S. 331, 335–337, 40 S.Ct. 338, 64 L.Ed. 596 (1920) (Brandeis, J.); *St. Regis Paper Co. v. United States,* 368 U.S. 208, 225–227, 82 S.Ct. 289, 7 L.Ed.2d 240 (1961); *United States v. Pacific Coast European Conference,* 451 F.2d 712, 717–719 (9th Cir. 1971). *Crowell v. Benson,* 285 U.S. 22, 61–65, 52 S.Ct. 285, 76 L.Ed. 598 (1932); *McNeill v. Butz,* 480 F.2d 314, 318–321 (4th Cir. 1973); *Blackwell College of Business v. Attorney General,* 147 U.S.App.D.C. 85, 454 F.2d 928, 934–936 (1971); *Miles v. District of Columbia,* 354 F.Supp. 577, 581 (D.D.C.1973); *Paul v. Davis,* 424 U.S. 693, 702, fn. 3, 96 S.Ct. 1155, 1161, fn. 3, 47 L.Ed.2d 405 (1976); Hart, "The Power of Congress To Limit the Jurisdiction of the Federal Courts: An Exercise In Dialectic," 66 Harv.L.Rev. 1362, 1380–1383 (1953).

■ Plaintiff Tufts possessed a cognizable liberty-property interest in her expectation of continued federal employment. *See, Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577–579, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sinderman,* 408 U.S. 593, 602–603, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Arnett v. Kennedy,* 416 U.S. 134, 151–152, 165–166, 208–209, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974); *Compare, Bishop v. Wood,* 426 U.S. 341, 344, fn. 6, 96 S.Ct. 2074, 2077, fn. 6, 48 L.Ed.2d 684 (1976); *Paul v. Davis,* 424 U.S. 693, 702, fn. 3, 96 S.Ct. 1155, 1161, fn. 3, 47 L.Ed.2d 405 (1976); *Lynch v. Household Finance,* 405 U.S. 538, 542–553, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972) (distinction between personal and property rights abolished). Jurisdiction for such a claim is proper based on 28 U.S.C. § 1331. *See, White v. Bloomberg,* 345 F.Supp. 133, 141 (D.Md.1972), aff'd 501 F.2d 1379 (4th Cir. 1971). *See also,* Sell's Affidavit, p. 1, attached to defendants' December 15, 1975 motion to dismiss.

■ However, the grievance-arbitration provisions of Tufts' collective bargaining agreement furnished her with an adequate opportunity to obtain a fair hearing in which to contest the allegedly arbitrary deprivation of her job, and therefore she was not deprived of a liberty-property interest in violation of due process. In *Malone v. United States Postal Service,* 526 F.2d 1099 (6th Cir. 1975) the Sixth Circuit Court of Appeals stressed Congress' reliance upon collective bargaining, grievance-arbitration procedures as a method of resolving postal service labor disputes. The *Malone* court wrote,

"The Postal Reorganization Act, in accord with the strong federal policy that evolved under the National Labor Relations Act, expressly authorized the adoption of grievance arbitration provisions in Postal Service collective bargaining agreements. . . .

"In enacting the Postal Reorganization Act, Congress recognized that 'no single need is more insistent than that for the reform of the labor-management structure.' The method chosen for reform was to 'bring postal labor relations within the same structure that exists for nationwide enterprises in the private sector.' 2 U.S. Code Cong. and Admin.News 1970, pp. 3649–3662. Pursuant to this goal, Congress enacted 39 U.S.C. § 1209(a), which provides:

'Employee-management relations shall, to the extent not inconsistent with provisions of this title, be subject to the

provision of subchapter II of chapter 7 of title 29.' [The National Labor Relations Act.]

"One of the reforms adopted in the Postal Reorganization Act was a provision permitting the adoption of grievance arbitration procedures. 39 U.S.C. § 1206(b) provides:

(b) Collective-bargaining agreements between the Postal Service and bargaining representatives recognized under section 1203 may include any procedures for resolution by the parties of grievances and adverse actions arising under the agreement, including procedures culminating in binding third-party arbitration, or the parties may adopt any such procedures by mutual agreement in the event of a dispute.

"In the National Labor Relations Act, Congress explicitly recognized the strong federal policy favoring the settlement of labor-management disputes by grievance arbitration procedures adopted by the parties. Section 203(d) of the Act, 29 U.S.C. § 173(d) states:

'Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement.'

The Supreme Court has likewise recognized the central role of grievance and arbitration procedures in the private sector. E. g., *United Steelworkers of America v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957)." See, *Malone, supra* at 1103–1104.

Tufts had an opportunity to invoke a procedure which could have resulted in a full arbitration hearing had she filed a grievance within five days of her discharge as required by step one of the grievance procedure stated in the Union contract. *See,* Exhibit A, p. 1, attached to defendants' motion to dismiss filed July 23, 1976. Tufts may not claim that she was denied a fair hearing when she failed to timely seek such a hearing pursuant to her collective bargaining agreement, unless she also alleges that governmental officials intentionally and willfully deceived her in a fashion calculated to cause her to waive her collective bargaining rights by not filing a timely grievance.[13] She has offered no allegations

13. The defendants argued that the contractual grievance procedures limited Tufts' substantive right to federal employment by qualifying her expectation of continued employment. The view that a government employee's substantive liberty-property interest in his continued expectation of public employment may be shaped by the procedures under which the employee is permitted to challenge the validity of a deprivation of his employment rights was *expressly* rejected by a majority of the United States Supreme Court in *Arnett v. Kennedy,* 416 U.S. 134, 166–167, 94 S.Ct. 1633, 40 L.Ed.2d 15 (Powell, J.; Blackmun, J.), 177–178 (White, J.), 211 (Marshall, J.; Brennan, J.; Douglas, J.); *Compare, Bishop v. Wood,* 426 U.S. 341, 345, 353; 96 S.Ct. 2074, 2078, fn. 8; 2082, fn. 4, 48 L.Ed.2d 684 (Brennan, J.; Marshall, J. dissenting); 96 S.Ct. at 2083–2085 (White, J.; Brennan, J.; Marshall, J.; Blackmun, J., dissenting). *See also, Wells v. Board of Regents of the Murry State University,* 545 F.2d 15, 17–18 (majority), (Edwards, dissenting) (6th Cir. 1976). This Court likewise recognizes that the grievance procedures expressed in Tufts' Union

contract do not shape the boundaries of her expectation of continued public employment. The only question before this Court is whether Congress and the Postal Service afforded Tufts an opportunity to obtain a fair hearing in order to establish that she was arbitrarily and capriciously stripped of her expectation of continued public employment. This question the Court resolves in favor of the defendants by holding that the availability of the collective bargaining grievance procedures furnished the requisite opportunity for Tufts to be heard. Tufts argues, without the support of verified facts in the record, that the defendants failed to follow Postal Service regulations in discharging her. However, this argument is irrelevant to the due process question because she did not avail herself of the opportunity to establish the defendants' regulatory violation by properly invoking the grievance procedures available to her.

Furthermore, this is not a case where the procedures set out for obtaining a hearing deprived the federal employee of all access to the

or verified facts which suggest that government officials intentionally deceived her with respect to the filing on a timely grievance.

The record currently before this Court does not establish facts upon which reasonable minds may conclude that Tufts' due process right to a hearing was violated by the defendants, and therefore the defendants' motion for summary judgment is granted.

This Memorandum of Opinion constitutes findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).

IT IS SO ORDERED.

courts. *See, Boddie v. Connecticut,* 401 U.S. 371, 377–379, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971) (Harlan, J.) Tufts could have sought judicial review of her discharge by suing her Union and employer, charging the Union with a breach of its duty of fair representation by failing to adequately process her grievance. No evidence indicates that Tufts' Union representative advised her of the crucial necessity of filing a timely grievance in order to preserve her arbitration hearing rights, but the record does indicate that the Union official involved was employed in postal management shortly after Tufts discharge. *See,* Ikner's Affidavit, pp. 1–2, attached to the defendants' December 15, 1973 motion to dismiss; Tufts' Affidavit, Exhibit 7, p. 1, attached to the plaintiff's brief filed on January 16, 1976, opposing the defendants' motion to dismiss. Surely such fair representation suits will proliferate in light of the Sixth Circuit's holdings that: (1) postal employees must be represented exclusively by their Union representatives in grievance-arbitration proceedings, *see, Malone v. United States Postal Service,* 6 Cir., 526 F.2d 1099, 1106–1109; (2) Union "negligence" in processing a grievance constitutes a breach of the duty

of fair representation, *see, Malone, supra* at 1110; *Ruzicka v. General Motors,* 523 F.2d 306, 309–312 (6th Cir. 1975). *See also, Vaca v. Sipes,* 386 U.S. 171, 179–193, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); 29 U.S.C. §§ 157–159. Obviously such a fair representation suit by Tufts would not be barred by *res judicata* because it would depend on facts different from those litigated in this action, *i. e.,* the facts surrounding Ikner's consultations with Tufts regarding her post discharge rights under the collective bargaining agreement.

Furthermore the record fails to conclusively establish that Tufts was not a preference eligible, non-probationary employee. If she did attain preferred status, then she had, and may still have, the opportunity to seek review by the Civil Service Commission [C.S.C.] of her discharge pursuant to 39 U.S.C. § 1005(a)(2). *See, Malone v. United States Postal Service,* 526 F.2d 1099, 1103–1105 (6th Cir. 1975). Judicial review of the C.S.C.'s determination may be had pursuant to 5 U.S.C. § 706; 28 U.S.C. § 1331.